UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-232(38) (JRT/DTS)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

TIMOTHY PAUL HANSSEN,

    Defendant.

**GOVERNMENT'S SENTENCING MEMORANDUM**

For the following reasons, the United States recommends that Defendant Timothy Hanssen receive a sentence of 60 months imprisonment. The United States believes that such a sentence, which is a downward variance below the low end of the applicable Guidelines range, is sufficient, but not greater than necessary, to comport with the Section 3553(a)(2) sentencing factors.

### I.  Relevant Facts

**A. Offense Conduct**

On October 20, 2020, Hanssen was charged in a 53-count indictment with conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1349. Hanssen entered a guilty plea pursuant to a plea agreement on August 7, 2023. The circumstances of the offense are set forth in the Presentence Investigation Report (the "PSR," ECF No. 2055).

For over a decade, Hanssen participated in a large, nationwide telemarketing fraud scheme involving magazine subscription sales. Between 2007 through 2020, Hanssen worked for a company involved in the fraudulent magazine industry located

in Minnesota. Hanssen's co-defendant and ex-wife, Monica Sharma-Hanssen, owned the company, called Midwest Publishers Home Office ("MPHO"). Hanssen, along with Sharma-Hanssen, operated a telemarketing call center in St. Louis Park, Minnesota.

Hanssen and others perpetuated a conspiracy to defraud victims across the country, many of whom were older or otherwise susceptible to fraud. Hanssen and his co-conspirators fraudulently induced consumers into making payments related to purported magazine subscriptions. Telemarketers working for the fraudulent companies called lists of consumers and made a series of lies and misrepresentations, including that the telemarketer was calling from the consumer's existing magazine company and was calling in order to reduce the monthly payments for an existing magazine subscription. But in reality, the company had no existing relationship with the consumer and tricked the consumer into paying for an expensive, new magazine subscription that they did not want or understand they were ordering.

Hanssen worked in a managerial capacity at MPHO. In that role, he obtained lists of consumers who had active magazine subscriptions through other companies. At his direction, MPHO sales employees called people on the lists to defrauded them.

In the course of the scheme, Hanssen and others at MPHO defrauded thousands of victims and collected over $9.5 million from victims as a result of the fraudulent scheme.

**B. Defendant's Criminal History**

Hanssen has a long and significant criminal history. Many of those convictions stem from Hanssen's longstanding struggles with substance abuse and addiction.

This includes a litany of lower-level convictions, including for burglary, disorderly conduct, fleeing a police office in a motor vehicle, domestic assault, and drug possession. For the better part of two decades, coinciding with participating in this fraud scheme, Hanssen was routinely violating the law in other ways—and his criminal history reflects that.

Hanssen also has a much more significant conviction for fourth degree criminal sexual conduct from 2003. In that case, he was convicted of kidnapping an adult male and female juvenile, then committing a sexual offense against the female juvenile. For that conviction, he received a 33-month prison sentence, stayed for 5 years. This was a heinous sexual crime against a 16-year-old girl who was, at random, victimized and traumatized by Hanssen.

Importantly, none of these convictions—including the incredibly serious offense described above—or their corresponding punishments prevented Hanssen from engaged in further criminal conduct. Based on these convictions, Hanssen has a criminal history score of 26, and falls into criminal history category VI.

C. **Defendant's Personal History**

In many respects, Hanssen was born into the magazine industry. His father owned a magazine and publication company and he was exposed to the industry from a young age.

Hanssen's upbringing was not without its challenges. His parents separated when he was young, and from an early age he found himself in trouble for small

3

offenses like stealing a tractor or marijuana. That said, Hanssen was able to graduate from high school and received his diploma.

Hanssen has long struggled with substance abuse and addiction. He first tried drugs and alcohol as a teenager, and early on faced challenges. He has continued for many years to struggle with issues relating to his alcohol and drug addictions.

## II. Argument

### A. Legal Background

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). "[U]nder the advisory guidelines scheme, sentencing judges are required to find sentence-enhancing facts only by a preponderance of the evidence." *United States v. Scott*, 448 F.3d 1040, 1043 (8th Cir. 2006).

"[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 552 U.S. at 49-50; 18 U.S.C. § 3553(a). The Section 3553(a) factors include "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

### B. The Presentence Investigation and Guidelines Calculations

The United States has reviewed the PSR prepared by the U.S. Probation Office

and does not object. The PSR concluded that the total offense level is 30, and the criminal history category is VI. Based on this, the Guidelines range term of imprisonment is 168 to 210 months. (PSR ¶ 200.)

**C.   The Appropriate Sentence**

A careful consideration of the Section 3553(a) factors warrants a sentence of 60 months imprisonment.

1.   <u>The Nature and Circumstances of the Offense.</u>

Hanssen's conduct was unquestionably serious and warrants a correspondingly serious sentence. He participated in a large, nationwide fraud scheme that targeted thousands of elderly and otherwise vulnerable victims. This Court has seen first hand the effect of this scheme on the victims. Fixed income, elderly victims who were swindled out of tens of thousands of dollars of much needed retirement funds. Confused victims with dementia who were repeatedly preyed out because of their diminished capacity by MPHO and other companies involved in the conspiracy. Victims who were desperate to make the fraud stop—and Hanssen and others at MPHO preyed on their desperation to defraud them over and over again.

Although Hanssen knew that he and others at the company were committing fraud, he continued to work there day in and day out and carried out the scheme for more than a decade. He knew the harm the fraud scheme caused—to vulnerable victims, elderly victims, confused victims—yet continued to perpetrate it day in and day out.

Hanssen worked in a managerial capacity at MPHO and played a key role. He was also married to the owner of the company. However, regardless of Hanssen's title

5

at MPHO, he was responsible for many of the day-to-day responsibilities of MPHO. He obtained lead lists containing the names of elderly or vulnerable victims—the key driver of this fraud scheme—from many of the most notorious lead brokers involved. He then provided those leads to telemarketers at MPHO, who he knew would calls those individuals to lie and defraud them, one telephone call at a time.

But Hanssen did not just work behind the scenes at MPHO. He regularly called victims and personally took part in defrauding people on telemarketing calls. Hanssen, using the alias "Scotty," was amongst the MPHO employees who were recorded calling undercover federal agents and lying to them in an attempt to defraud them. Those recorded calls tell the story of the lies and deceit telemarketers at MPHO—like Hanssen—peddled to the innocent victims to lie, trick, and steal their money. In a sense, Hanssen touched every possible role that one could have at MPHO.

Moreover, unlike some of the lower-level telemarketers at MPHO, Hanssen saw the fruits of his fraudulent activity (although some of that may have been by virtue of his marriage to Monica Sharma-Hanssen). Hanssen spent years living a life full of trappings of success, including a multimillion-dollar house in Lake Minnetonka—all paid for with fraud proceeds.

2.   The History and Characteristics of the Defendant.

In some respects, Hanssen had a normal upbringing with plenty of potential, which makes it more difficult to understand how he ended up here. He graduated high school with a diploma and had no shortage of opportunities. On the other hand, Hanssen was introduced to the magazine industry by his family at a young age. That certainly does not justify his actions or fraudulent activity, but it may explain how he

6

ended up in an industry rife with fraud. Yet at any time during the more than a decade he participated in this fraud scheme, Hanssen could have walked away and sought honest employment.

Hanssen also has a serious criminal history, including a horrific conviction for fourth degree sexual conduct. None of the prior convictions or sentences has deterred his criminal behavior. In fact, he continued to perpetrate this fraud scheme while simultaneously committing many of the crimes underlying his criminal history. A serious—and escalating—sentence is warranted here to deter Hanssen from future criminal activity.

3. <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Afford Adequate Deterrence</u>

In light of the seriousness and wide-spread nature of the offense, Hanssen requires a sentence that will not only prevent him from committing another offense in the future but will also provide general deterrence for others who operated similar fraudulent schemes brazenly throughout the country for decades. Hanssen and others who participate or consider participating in a similar scheme are more likely to be deterred from committing fraud if they learn there are serious consequences, and they will pay a stiff price for it. A significant sentence will promote respect for the law and reflect the damage to victims and the community as a whole as a result of a large-scale fraud scheme that preyed on elderly and otherwise vulnerable victims. This is particularly true for Hanssen, who over the years he was involved on this fraud displayed many lavish trappings of success borne of out fraud proceeds. A sentence of 60 months imprisonment will serve the needs of sentencing to

reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from further similar fraud schemes.

### III. Conclusion

For all the above reasons, the United States respectfully requests that the Court vary downward and impose a sentence of 60 months imprisonment.

Respectfully submitted,

Dated: August 7, 2024

ANDREW M. LUGER
United States Attorney

/s/ *Harry M. Jacobs*

BY: HARRY M. JACOBS
MATTHEW S. EBERT
MELINDA A. WILLIAMS
GARRETT S. FIELDS
Assistant U.S. Attorneys